UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANICE HURRLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:15-cv-00685-RLY-TAB |
| | ) | |
| RECONSTRUCTIVE HAND TO | ) | |
| SHOULDER OF INDIANA LLC and | ) | |
| MICHAEL PANNUNZIO, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Janice Hurrle, was employed as an Office Manager at Reconstructive Hand to Shoulder of Indiana LLC ("RHSI") for many years until she was fired in April 2015. After her termination, she brought this lawsuit asserting that Defendants, RHSI and Dr. Michael Pannunzio, failed to pay her for nearly 600 hours of overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendants now move for summary judgment, arguing, *inter alia*, that they had no knowledge of the alleged overtime until Hurrle filed her Complaint and her claim is based on guesswork. The court agrees and therefore **GRANTS** Defendants' motion.

**I. Background**

Hurrle worked as the Office Manager for RHSI and its previous corporate form for eleven years before ultimately being terminated in April 2015. (Filing No. 13, Amended Complaint ¶ 6). She was paid on a salary basis and classified as exempt from the

1

overtime provisions of the FLSA. (*Id.* ¶ 7; Filing No. 37-4, Deposition of Janice Hurrle 35:25-36:3).

As Office Manager, her duties included preparing a spreadsheet of the hours that all employees (both salary and hourly) had worked for each pay period, and then sending that information to the payroll processor, Root & Associates. (Hurrle Dep. 32:6-25, 33:12-17). Employees provided their hours to Hurrle by submitting handwritten timesheets. (*Id.* 33:12-17, 37:2-4). When employees reported overtime, Hurrle would make a notation in the column on her spreadsheet for overtime. (*Id.* 37:5–12). She included overtime hours for other employees in the payroll spreadsheets, but never reported any overtime hours for herself. (*Id.* 93:15–22, 132:12-17).

In May 2014, RHSI moved its Carmel office from a building on Old Meridian Street to an adjacent building on that same street. (*Id.* 51:14-20; Filing No. 37-5, Deposition of Dr. Michael Pannunzio 96:11-17). Hurrle alleges that she worked overtime hours in connection with the move. (*See* Amended Complaint ¶ 11). After the move, she complained to Dr. Pannunzio that she was not paid for those extra hours. (Hurrle Dep. 91:1-20). She did not "raise any issue about other overtime with him at that point." (*Id.* 132:18-22). Except for that one conversation, Hurrle never complained to anyone, including the physicians at RHSI or her contact at Root & Associates, about not receiving overtime compensation. (*Id.* 93:8-12, 94:7-15). She also never filed a complaint with the U.S. Department of Labor or the Indiana Department of Labor about not getting paid overtime. (*Id.* 93:25-94:6).

In her Amended Complaint, Hurrle includes a chart detailing the overtime hours she allegedly worked and was not compensated for. (*See* Amended Complaint ¶ 11). This chart shows a total of 588 unpaid overtime hours, spanning from April 2012 to April 2015. (*Id.*). Hurrle estimated these hours; the chart represents her "best guess." (Hurrle Dep. 128:20-23, 129:4-5, 132:7-11). She does not have any documents, such as a calendar or journal, that reflect any of the alleged overtime. (*Id.* 10:6-13:12, 128:24-129:3).

## II. Legal Standard

"Summary judgment is proper where, construing facts and drawing inferences in the light most favorable to the non-moving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Novoselsky v. Brown*, 822 F.3d 342, 348-49 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

## III. Discussion

The FLSA generally provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless" he remits overtime pay at a rate of "not less than one and one-half times the regular rate." 29 U.S.C. § 207(a)(1). "The employee bears the burden of proving that she performed overtime work for which she was not properly compensated." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011).

Defendants appear to advance six distinct arguments in support of their motion: (1) they did not have any knowledge of the unpaid overtime hours until this suit was filed; (2) Hurrle's chart of unpaid overtime hours is based on guess and speculation; (3)

Hurrle was properly classified as exempt from overtime as an administrative employee; (4) Dr. Pannunzio was not her "employer" for purposes of the FLSA; (5) she is not entitled to a three-year statute of limitations; and (6) she is not entitled to recover double liquidated damages. The court considers the first two arguments in turn, and its resolution of those issues obviates the need to consider the remaining four.

### A. Whether Defendants Had Actual or Constructive Knowledge of the Overtime Hours

To prevail under the FLSA, Hurrle must show that Defendants had actual or constructive knowledge of her overtime work. As the Seventh Circuit explained, "While an employer cannot slyly sit back in order to reap extra work without pay, it has no obligation to pay for work it did not know about and had no reason to know about." *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 270 (7th Cir. 2014). Put another way, the FLSA "stops short" of imposing liability for unpaid overtime on an employer that did not have the opportunity through reasonable diligence to learn overtime was being used. *Kellar*, 664 F.3d at 177. *See* 29 U.S.C. § 203(g); 29 C.F.R. § 785.11. An employer does not conclusively demonstrate a lack of knowledge by simply pointing to an internal rule against overtime or proving that the employee worked the additional hours without seeking prior approval. *Kellar*, 664 F.3d at 177; 29 C.F.R. § 785.13. Likewise, an employee does not win the day by having her employer concede it was "theoretically possible" that she was performing unpaid overtime work. *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 861 (N.D. Ill. 2015).

Hurrle has failed to produce any evidence suggesting that Defendants had actual or constructive knowledge of the vast majority of her unpaid overtime hours. Rather, the facts, when taken in the light most favorable to her, demonstrate that Defendants only had reason to know about the overtime hours she worked in connection with the move. Hurrle testified that she complained directly to Dr. Pannunzio that she worked many extra hours to help move the practice and was not compensated for it. (Hurrle Dep. 91:2-20, 94:10-13). Her deposition testimony makes clear that this complaint was specifically about the overtime hours worked in connection with the move, not a general complaint about unpaid overtime occurring every pay period. (*Id.* 91:12-16 (Q: "And what was the substance of that conversation?" A: "That I worked overtime and was not paid and another associate was." Q: "In connection with the move?" A: "Yes."), 132:18-22 (Q: "Although you had a discussion with Dr. Pannunzio about overtime in connection with the move, you didn't raise any issue about other overtime with him at that point?" A: "No.")).

Hurrle plainly admits that she did not have any other discussions about overtime with anyone at RHSI. (*Id.* 93:8-12, 94:10-15, 132:18-22). She also never recorded overtime hours on her timesheet or submitted overtime hours for herself to the payroll processor. (*Id.* 93:15-18, 132:12-17). This is significant because she did submit overtime hours for other employees, (*id.* 93:19-22), meaning that she understood how to make an overtime claim. Furthermore, Dr. Pannunzio testified that no one at RHSI instructed Hurrle to never record more than 40 hours per week. (Pannunzio Dep. 95:1-3). Lastly, Hurrle did not file a complaint with any government agency about the

uncompensated work. (Hurrle Dep. 93:25-94:6). Hurrle makes no attempt to argue that Defendants had any reason to suspect she had worked other overtime hours, and the court has no evidence to support a finding of actual or constructive knowledge for those additional hours.

Therefore, the court finds that of the 588 overtime hours listed in the Amended Complaint, Defendants only had reason to know of the 43 extra hours worked between April 13, 2014 and May 10, 2014. Defendants are entitled to summary judgment on Hurrle's claim for compensation for all other hours.

### B. Whether Hurrle Has Presented Sufficient Evidence of the Alleged Overtime Hours

Defendants also maintain that Hurrle has not presented evidence to substantiate the specific number of hours claimed for each pay period. The Supreme Court cautioned that while an employee "has the burden of proving that [s]he performed work for which [s]he was not properly compensated," courts should not make "that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262. After all, "it is the employer who has the duty under § 11 (c) of the Act to keep proper records" of hours worked. *Id.* Additionally, "[e]mployees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." *Id.*

According to the *Mt. Clemens* Court, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the employee

carries her burden if she "proves that [s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." [1] *Id.* After the employee makes that initial showing, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

The only evidence showing the amount and extent of the unpaid overtime work is the chart in the Amended Complaint, and unfortunately that document is not verified. Putting that issue aside though, Hurrle testified in her deposition that she "estimated the time" listed in that chart. (Hurrle Dep. 128:20-23). She does not have any documents (such as calendars, planners, time logs, or diaries) that reflect those overtime hours. (*Id.*

---

[1] Initially, it is somewhat unclear if this standard applies in this case. Hurrle must necessarily claim that RHSI's records are incorrect because they do not show any overtime hours for her. Yet, *she* is the one who created that error because she never recorded overtime hours for herself. She does not contend that anyone at the practice instructed her to always record eighty hours or less per pay period, or that someone altered her hours after she submitted them. Defendants therefore suggest that Hurrle should be estopped from claiming she worked more hours than she reported on her timesheet. *See Schremp v. Langlade Cty.*, No. 11-C-590, 2012 U.S. Dist. LEXIS 106344, at *6 (E.D. Wis. July 31, 2012) ("[E]mployers have the right to require employees to keep track of their work time and where an employee elects to under-report his or her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA."). While this is a persuasive argument, the evidence suggests Hurrle explicitly told Dr. Pannunzio that she had worked overtime in connection with the move. The court therefore holds that the *Mt. Clemens* standard applies. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours. Accordingly, the fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking [the *Mt. Clemens*] standard where those records appear to be incomplete or inaccurate.").

7

10:6-13:12, 128:24-129:3). She therefore agreed that the chart was "just [her] best guess." (*Id.* 129:4-5). (*See id.* 132:7-11 (Q: "How did you calculate those numbers?" A: "Which numbers?" Q: "Overtime hours. You guessed, you said before?" A: "I estimated at least one hour per week of overtime.")). By way of example, counsel for Defendants asked Hurrle for details about a specific week listed in her Amended Complaint:

> Q: You don't have any recollection of what you actually did the week of April 10, 2015, I mean of February 10, 2015?
>
> A: February 10, 2015?
>
> Q: Right, how many hours you worked that week.
>
> A: No.

(*Id.* 129:6-11). Defendants highlight this testimony and argue that Hurrle has not satisfied her initial burden under *Mt. Clemens*.

This presents a difficult question. First, the Seventh Circuit has explained that Hurrle's lack of documentary evidence is not fatal to her claim:

> The unreported time for each employee could be reconstructed from memory, inferred from the particulars of the job[] . . ., or estimated in other ways—any method that enables the trier of fact to draw a "just and reasonable inference" concerning the amount of time the employee had worked would suffice.

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013). *See Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 819 (7th Cir. 2016) ("Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours."). Additionally, in an earlier case, the Seventh Circuit

8

determined that employees can prove their overtime hours indirectly by using "triggering factors," or events that help them recall when they worked extra hours. *See Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 597 (7th Cir. 2008) (citing *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1317 (11th Cir. 2007)) (noting that in *Allen*, "one employee who could not produce any documentation of her overtime work, could point to triggering factors such as occasional after-school ice cream sales and dances that would help her recall dates in which she worked overtime").

Unfortunately, it is not at all clear that Hurrle's allegation that she worked overtime from April 13, 2014 to May 10, 2014 has any basis in her memory. She admitted that the hours in her chart were simply a guess. In other words, Hurrle did not use any "triggering factors" by testifying something akin to, "I know I worked an extra two hours each day during the entire month of April because I started attending an exercise class that began at 7:30 p.m., and I drove there straight from work" or "I believe I worked eight hours on May 3 because I remember getting fast food breakfast on the way to work and then meeting my husband for dinner as soon as I finished for the day." Those kind of statements might constitute sufficient evidence under these circumstances, but, alas, the court has not been presented with anything of the sort.

Hurrle had the initial burden to "produce[] sufficient evidence to show the amount and extent of [the unpaid overtime] work," *Mt. Clemens*, 328 U.S. at 687, but she failed to do that here.[2] That failure dooms her claim. *See Goodman v. NSA, Inc.*, 621 F.3d 651,

---

[2] The only evidence in the record that lends any credence to her claim is a portion of Dr. Pannunzio's deposition designated by Defendants. Dr. Pannunzio testified that he saw Hurrle in

654 (7th Cir. 2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case.") (citations omitted). The court cannot make a just and reasonable inference that Hurrle worked 43 overtime hours when she presents no evidence showing that.

A fellow district court in this circuit recently encountered a similar set of facts and came to the same conclusion:

> Brand points to his testimony that during the relevant period he only took lunch breaks "maybe once or twice, maybe three times a month, if I was lucky." Similarly, Jackson points to his testimony that he worked "[o]ver four years, probably three years' worth" of his lunches, and "70 to 75 percent of the time lunch was interrupted." The language they use about how often they "maybe" or "probably" worked through lunch suggests guesswork. They point to no explanation as to how they reached their estimates nor do they point to any memory "triggering factors" or other details providing the basis for their recollection. Bare allegations and vague undocumented estimates are insufficient to survive summary judgment. Because that is all Brand and Jackson have supplied here, they have not shown that they can demonstrate the extent of the unpaid wages owed them even under the just and reasonable inference.

*Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 742 (N.D. Ill. 2015) (citations and some quotation marks omitted). The *Brand* court opined that under the *Mt. Clemens* standard, employees "may rely on their recollection, but not on speculation." *Id.* Like the employees in *Brand*, Hurrle provides no explanation as to how she reached her estimates.

---

the office on Saturday, May 3, 2014, a day in which she claims she worked eight overtime hours unpacking boxes and setting up the new office. (Pannunzio Dep. 99:13-21). However, he "did not observe her doing anything" because he was busy working. (*Id.* 100:2-14). In the end, this does not save Hurrle's claim because Dr. Pannunzio did not testify that Hurrle worked for a particular number of hours. Moreover, the fact that Hurrle worked on a Saturday does not necessarily mean she worked overtime.

10

All she offers is speculation, and that is insufficient at summary judgment. *See Ihegword v. Harris Cty. Hosp. Dist.*, 929 F. Supp. 2d 635, 668 (S.D. Tex. 2013), *aff'd*, 555 F. App'x 372 (5th Cir. 2014) (per curiam) ("[P]laintiff's estimate of the uncompensated overtime she worked is not only unsubstantiated but also speculative, and an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference.").

The two findings above collectively dispose of all the overtime hours claimed by Hurrle. Accordingly, the court need not address the balance of the parties' arguments. Additionally, the court need not reach the issues discussed in Defendants' Motion to Strike Hurrle's Verified Statement.

**IV. Conclusion**

Therefore, Defendants' Motion for Summary Judgment (Filing No. 35) is **GRANTED**. Defendants' Motion to Strike (Filing No. 53) is **DENIED AS MOOT**.

**SO ORDERED** this 20th day of January 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.